KNOXVILLE SANGRAVEL MATERIAL CO. v. DUNN et al.—151 S. W. (2d) 174.

Eastern Section. October 6, 1940.

Petition for Certiorari Denied by Supreme Court, May 17, 1941.

94

Powers & Thornburgh, of Knoxville, for appellant.
Testerman, Ambrose & Badgett and Williston M. Cox, all of Knoxville, for appellees.

PORTRUM, J.   This suit was filed to collect $600 as balance due upon a contract for the sale and delivery of mixed concrete to the defendant used in the construction of an addition to the Tyson School building in the city of Knoxville.   The defendant denies that he owes this sum, contending that the defendant failed to deliver the yardage he was charged with.   In this suit this court is concerned with this question.   Has the complainant received pay, as per the contract price, for the number of yards of concrete it delivered to the defendant?

The complainant alleges that it delivered to the defendant upon the site 803.3 cubic yards of ready-mixed concrete, from March 30, 1938, to the completion of the building August 10, 1938, aggregating the sum of $5,988.71; and that it had received payment with the exception of a balance of $601.29 for which this suit is brought.   The yardage was determined by the complainant by weight, that is, the employees mixing the ingredients of the concrete would weigh the stone, gravel, sand, and cement according to a standard formula, and the concrete, when mixed, would be delivered in a concrete steel drum upon trucks in quantities of 1½ yards, 1 yard, and less, as ordered, and that dray tickets or receipts accompanied each delivery and were signed by the defendant, the defendant retaining a copy and the original being returned to the complainant.   The complainant has introduced and filed as evidence these receipts, aggregating many hundred, and totaling the sum of 803.3 cubic yards of mixed concrete.

The defendant denies that he received this amount of cubic yardage, claiming that he received only the sum of 718.25 cubic yards, for which he has paid.   This contention makes the issue to be determined.

██ ██ The signed dray tickets or receipts are prima facie evidence of the amount delivered and received, but like any other receipts, they are not conclusive evidence of this fact; they may be shown to be erroneous, and the burden is upon the defendant to establish the fact that they are not correct. He adopts two methods in establishing this fact (1) that the measurement by weight as used by the complainant, due to the long drawn-out operation and the technical requirements, was inaccurate and untrustworthy in determining the amount of yardage; (2) that the concrete was purchased and used in the construction of parts of the wall and floor of the public school building, based upon the architect's plans calling for so many cubic yards of concrete, and that the walls and floor as finished demonstrate by actual measurement, and by calculations from the plans, that the actual yardage of concrete used corresponded to the claim of the defendant, and demonstrated that the yardage was in fact 718.25 cubic yards, or approximately this sum, therefore the defendant's insistence has been established by both methods, especially the amount of concrete actually used as shown by the second method, and that the receipts have been overcome.

The Chancellor was of the opinion, taking into consideration the architect's plans, the estimates of the bidders, the testimony of experts as to the amount of concrete actually going into the building, the testimony of the employees actually constructing the building, and the measurement of the yardage of concrete in place in the building, that the amount of concrete used in this building did not exceed the sum of 718.25 cubic yards, and that the complainant's measurement by weight was inaccurate, as evidenced by his dray tickets or receipts, and he found in favor of the defendant and dismissed the complainant's bill, from which an appeal is prosecuted.

Before undertaking a review of the proof, the court will pass upon the insistence of the complainant that the uniform sales law is applicable, being chapter 118, Acts of 1919, codified in the Code, sections 7242, 7241.

Section 7242. If after acceptance of the goods the buyer fails to give notice to the seller of the breach of any promise within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor. If the buyer does not want to accept he shall notify the seller that he refused to accept them.

Section 7241. The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when he does any act inconsistent with the ownership of the seller, or where he retains the goods after the lapse of a reasonable time without intimating to the seller that he has refused them.

██ ██ The court is of the opinion that these provisions have no application. They pertain more to the quality of the goods than to the quantity. There is no complaint as to the quality of the concrete,

and the defendant was ready and willing and anxious to receive the concrete in a sufficient amount to complete the building according to the plans and specifications. He was bound by law, and expressed a willingness, to pay for all concrete delivered to him, and these sections are not applicable to a case of short weight. The complainant was in no way injured by the failure to give notice of a shortage, it could correct the error now as well as at any time. It certainly should not insist upon being enriched in the sum of $600 simply because the defendant did not give it notice of an error which it should have anticipated, or which it, by using due caution, should have guarded against. In fact the defendant did give notice within a reasonable time after the defendant discovered the shortage. After the completion of the contract, the defendant was paid for so many feet of concrete within the building, and it was charged for a much larger yardage by the complainant and then after a measurement of the yardage as constructed to ascertain the actual yardage in the building, it was determined that it was the complainant who was in error, and notice was given the complainant within a short time. But regardless of the notice, this is not a case for the application of the rule "No mistakes corrected after you leave the window." This court is concerned with but one fact, How much concrete did the complainant deliver to the defendant?

The complainant establishes by expert testimony that the yardage of concrete can be determined by weight. And it is also conceded that the yardage can also be determined by measurement when in place. It is shown that so many pounds of dry sand, gravel, rock, and cement will make one cubic yard of concrete in place. That is, you can prove one by the other: to prove that so many pounds, as per formula, of these ingredients will make a yard of concrete by measurement after the concrete is mixed and in place. This being established then if the correct measurement of concrete in place does not agree with the yardage according to the formula, then there was an error in weighing the ingredients and not in the formula. If the measurement of the concrete in place is not correct or reliable, then the weights are not discredited.

The formula for weighing the ingredients of concrete of different grades is complicated; the ingredients of each batch of concrete has to be weighed and this concrete was made in batches of 1½ yards, 1 yard and less; there were four different grades of concrete used, 1-2, 1-2-4 mix, 1-2-4 ten percent lime, and 1-3-5, and in mixing this concrete each of the ingredients has to be accurately weighed. There were approximately 600 tickets representing batches, and this required numerous weighing operations. To make a yard of concrete the weight of the rock in one mixture was 2,000 pounds, and in another 2,035 pounds, etc.; the sand in one mixture 1,400 pounds, in another 1,221 pounds, etc.; the cement in one mixture, 512 pounds,

in another 407 pounds, etc., which indicates that it is tedious business in measuring ingredients to actually determine a yard of concrete. The man who did the weighing states that the scales were standard and that his weights were correct. Upon this testimony the court must overthrow all the testimony of the defendant's expert witnesses who calculated the yardage from the architect's plans, who constructed the building, and who measured the concrete in place. If the weight formula of the testimony is to be adopted, then all other testimony must be rejected.

But it is established that this formula is based upon dry sand, gravel and rock, that the addition of water increases the weight of sand and rock which would require a different weight formula. It is shown that sand and gravel taken from the river is damp or wet, and that it upsets the formula by ten percent. The complainant's supplies were taken from the river. The complainant was to use the dry sand formula, but to compensate for any error it is admitted that 200 pounds additional weight was thrown in.

This court does not discredit the formula, or that the yardage cannot be determined by weight when the formula is accurately followed, but in view of the many avenues of error appearing in the practical application of the formula in this case, the court concludes without hesitation that the measurement of the concrete in place is much more trustworthy, and if the measurement of the concrete in place approximates nearly the amount of the concrete called for, then the measurement should be the standard.

To discredit the calculations made from the plans and specifications, this evidence is quoted and relied upon by the complainant: "A number of times we had to order additional concrete after we had consumed the theoretical yardage. I remember several instances where we had to get several truck loads, several yards, rather, over the cubic yardage."

This was the testimony of the foreman in charge of placing the mixed concrete in the wall. He determined the yardage required by the measurement from the plans and specifications, and ordered out the yardage called for by the measurement; the yardage delivered fell short of the yardage called for, as he remembered, in several instances. This does not discredit the theoretical yardage. On the other hand, it discredits the yardage delivered. If the dimensions of the wall are 27 cubic feet, and the foreman orders one yard of concrete and the concrete delivered does not fill the space, then the concrete was short of a yard, assuming that the walls are 27 cubic feet. The error here is determinable by ascertaining the cubic feet. We shall attempt to determine if the plans and specifications are correct and if the building was constructed, and the concrete poured, according to the plans and specifications.

When this building was advertised for contracts, there were two or more bidders for the concrete work. In placing their bids they

calculated the number of yardage of concrete and came within two or three percent of each other; there was a bidder for the steel work to reinforce the concrete, and to determine the amount of steel required it was necessary that he calculate the yardage of concrete, and he did so, and his calculation agreed with the concrete bidders. These calculations were made from the plans and specifications. After the building was completed, the defendant was paid upon the estimate of the architect, and after a dispute arose, the concrete in place was again measured by experts. These measurements all confirmed the figures of the architect. We feel that it is unnecessary to go into a detailed analysis of the defendant's proof in this regard.

The complainant attempts to impeach these measurements by showing that the forms may bulge or the floors may sag, and that hollow tile being used in the concrete floors, that the concrete could run between the seams of the tile and fill up the crevices or hollows in the tile, making it impossible to accurately measure the concrete after it had been placed. It is shown that the forms will bulge a quarter of an inch by the weight of the concrete, but it is also shown that this is taken care of by the architect in placing the forms. It is not shown that the architect failed in his calculations in taking care of this bulge in this instance. One side of the wall was visible but not the greater portion of both sides, and a bulge could not have been determined by measurement. In view of the defendant's testimony, this court will not assume that the walls bulged more than was taken care of by the architect.

The level of the concrete floor was established by strips placed four inches above the base or tile, and these strips check the amount of concrete used in laying the floor. If there were a sag the strips sagged also and the floor would not come above the level of the strips. There was no way here to waste 80 yards of concrete.

It was not necessary to tear up the floor to see if the hollow tiles were filled with concrete. Some were in fact broken and some concrete may have gone through the broken places, but a man was employed to go over these tiles and cover up all broken tiles before the concrete was poured. He testifies that he performed this duty. It is true that the water and perhaps some sand and cement could have run between the joints of the tile, but the large rock could not and the result would have been a honeycombing of the concrete. The large rock would still have been on a level with the top of the floor. This did not happen here, for a test of the concrete was made before pouring by filling a cone that was verticle and by lifting the cone from the concrete, if it sloughed off more than three inches because of dampness, it was too runny and would not be used. If the concrete was this dry, it was too dry for the sand and cement to run between the joints of the tile.

Had this job been done upon a cost plus basis, that is ten percent profit above the cost of the building, would the court disregard the

plans and specifications and establish the cost upon the dray tickets showing the concrete used which in turn was based upon the accurate weight according to a complicated formula, without regard to moisture, made by a laborer performing a full day's work each day over a period of months? The court does not adopt the measurement as superior to the weight formula; both when correctly followed are equal to the same thing, but when the two methods do not agree, there is an error and it is the duty of the court to determine this error.

It is shown that there was no wastage upon this job, and the court is of the opinion that there is no place within this school building for the 80 yards of concrete allegedly delivered. The yardage not being used here, it must follow that it was not delivered and that the receipts did not correctly reflect the amount delivered. The judgment of the lower court is affirmed with costs.